Shemia Fagan, ISB No. 12416
sfagan@hkm.com
HKM EMPLOYMENT ATTORNEYS LLP
999 West Main Street, Suite 100
Boise, ID 83702
Telephone: 208-500-2442
Facsimile: 206-260-3055

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMY HANSEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROSS DRESS FOR LESS, INC., a Virginia Corporation,<br><br>Defendant. | Case No.: 1:26-cv-00116-BLW<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR DECLARATORY JUDGMENT THAT COUNTS I, II, AND III ARE NOT WITHIN THE SCOPE OF DEFENDANT'S DISPUTE RESOLUTION AGREEMENT [DKT. 32]** |

## I. INTRODUCTION

This presents a narrow question. Hansen seeks a declaration that three customer-facing claims fall outside Ross's Dispute Resolution Agreement: Count I under the Unruh Civil Rights Act, Count II under California Civil Code section 51.5, and Count III under Title III of the ADA.

Dkt. 32 at 1-2. She does not contest that Counts IV through XIII arise from her employment and may be compelled to arbitration. *Id.*

Ross attempts to reframe this motion as an effort to escape arbitration altogether. It is not. The threshold contract question is whether an alleged retail-store customer exclusion is a dispute 'arising out of or in any way related to your employment with Ross.' The DRA's text, Ninth Circuit authority, and Ross's own exhibits show that Counts I through III invoke independent public-accommodation duties outside Section A.

Ross's arguments do not change that bargain. Section A's broad modifiers remain bounded by employment. Shared motive does not convert customer claims into employment disputes. Ross's internal process and recordkeeping do not supply the duties or injuries pleaded. Section B recognizes uncovered claims and preserves arbitration only for covered claims. And the transfer order reserved applicability for this Court.

**II. BACKGROUND AND RECORD CONVENTIONS**

Plaintiff Amy Hansen worked as a cashier at Ross's Boise, Idaho store. Compl. para. 10. She alleges that after a shift on May 31, 2024, she disclosed her mental-health condition to a manager. Compl. para. 11. Ross then placed her on administrative leave and had Human Resources question whether she posed a safety or theft risk. Compl. paras. 13-15.

The record reflects three distinct dates regarding Hansen's separation. District Manager Mark Berst aligned with the Associate Relations separation recommendation on June 7, 2024. Briant Decl. para. 3, Dkt. 39-4. Termination was communicated to Hansen by telephone on June 8, 2024. Briant Decl. para. 5, Dkt. 39-4; Dkt. 39-5, Ex. B. Hansen testified under oath that during this call, Store Manager Maria Rosales told her she was 'banned as a customer from all Ross stores.'

Hansen Decl. para. 8, Dkt. 15-1. Ross disputes this phrasing and the word 'ban' in a footnote. Dkt. 38 at 7 n.2. The effective date recorded on Ross's form is June 9, 2024. Dkt. 39-5, Ex. A at 3; Compl. para. 16. The Complaint separately alleges a 'company-wide ban as a customer' and that Hansen was 'banned as a consumer.' Compl. paras. 17-18.

The DRA provides that only "Covered Disputes" must be arbitrated. Dkt. 39-3, Ex. A at 3. Section A defines Covered Disputes as those "arising out of or in any way related to your employment with Ross," including application, employment, or separation. *Id.* Section B, titled "Limitations on Application of This Agreement," addresses mixed cases, providing that if claims "not covered" are combined with covered claims, "the covered claims will be arbitrated and continue to be covered." *Id.* Section E reserves interpretation, applicability, and arbitrability exclusively for the Court. *Id.* at 4. Sections G and H show how Ross drafted mandatory stays when intended, providing that nonarbitrable class actions "will be stayed" and specified PAGA claims "shall be stayed in the trial court." *Id.* at 5. Section B contains no stay command for standard uncovered claims.

## III. LEGAL STANDARD AND DELEGATION

Ross bears the burden of proving that the DRA encompasses the dispute at issue. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Contract formation is not in dispute; contractual scope is.

Section E of the DRA provides that any disputes or claims regarding the existence, interpretation, applicability, enforceability, or validity of the Agreement, including any questions of arbitrability, are reserved exclusively for the Court, and not the arbitrator. Dkt. 39-3, Ex. A at 4. Ross concedes this in a footnote, acknowledging that the Court decides questions of arbitrability.

Dkt. 38 at 8 n.3. This concession strips the generic presumption-in-favor-of-arbitration rhetoric out of the analysis. The parties explicitly contracted for a judicial answer to this scope question.

Under the Federal Arbitration Act ('FAA'), arbitration is strictly a matter of consent, and the presumption favoring arbitration cannot substitute for an agreement to arbitrate a specific dispute. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299-303 (2010). Granite Rock rejected applying the presumption before identifying an agreement to arbitrate the particular dispute. *Id.* at 301-03. Ross instead isolates 'any and all' and 'in any way related' from the words that follow and from the DRA's employment-centered structure. The FAA makes arbitration agreements enforceable as other contracts, but not more so. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Broad relational terms such as 'arising out of' or 'related to' are not boundless; they require a direct relationship to the specific object named in the clause. *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 797-800 (9th Cir. 2017).

**IV. THE DRA'S TEXT AND STRUCTURE LIMIT COVERAGE TO EMPLOYMENT DISPUTES**

While the DRA's plain-English opening line describes arbitration generally, Section A specifically defines "Covered Disputes" as those arising out of or related to Hansen's application, employment, or separation. Dkt. 39-3, Ex. A at 3. The object of every prepositional phrase in Section A is employment. The counterparties identified in Section A are Ross and "any other Ross associate, agent, or employee." *Id.* Every one of Section A's fifteen enumerated examples concerns workplace disputes, including wages, benefits, discharge, retaliation, harassment, discrimination, and statutory employment laws. *Id.* The list closes with "violation of any federal, state, or local laws governing the employment relationship." *Id.* The signature page reinforces at-will employment status. *Id.* at 6.

Ross's textual argument rests entirely on the adjectives "any and all" and "in any way related." However, those adjectives modify the noun "employment" and do not erase it. The DRA does not say "any dispute between you and Ross"; it says any dispute related to employment. In *Cocom v. ABM Aviation, Inc.*, No. 25-3246, slip op. at 12-15 (9th Cir. June 23, 2026), the Ninth Circuit applied a whole-text analysis, holding that general terms such as "all disputes" remain bounded by surrounding employment-specific terms and examples. The Ross DRA is clearer still because Section A establishes employment as an express prerequisite. Broad phrases cannot be isolated from their modifying objects to expand contractual scope.

**V. COUNTS I THROUGH III ASSERT STANDALONE CUSTOMER RIGHTS AND INVOKE PUBLIC-FACING DUTIES**

Comparing the pleading of Counts I through III against Count IV exposes the clean structural divide in this case. Count I alleges that Ross operates a business establishment within the meaning of Unruh and denied Hansen full and equal accommodations, advantages, facilities, privileges, or services. Compl. paras. 21-22. Count II alleges that Ross operates a business establishment and refused to contract with, sell to, or conduct business dealings with her under California Civil Code section 51.5. Compl. paras. 30-31. Count III alleges that Ross operates a place of public accommodation and denied her full and equal access under Title III of the ADA. Compl. paras. 40-41. Count IV is the first cause of action where the employer element appears, alleging that Ross was Hansen's employer. Compl. para. 46. The claim-specific allegations in Counts I through III invoke no employer duty, and none seeks back pay, reinstatement, or workplace remedies.

The statutory framework confirms the capacity in which Counts I through III sue Ross. The California Supreme Court has long held that the Unruh Civil Rights Act does not govern employment discrimination, but discrimination by business establishments in furnishing goods, services, and facilities to clients, patrons, or customers. *Alcorn v. Anbro Engineering, Inc.*, 2 Cal. 3d 493, 500 (1970). The Ninth Circuit has adhered to that distinction and rejected an attempt to expand Unruh from public accommodations into employment discrimination through ADA Title I. *Bass v. County of Butte*, 458 F.3d 978, 981-83 (9th Cir. 2006). Section 51.5 follows the same boundary: a plaintiff must stand in a relationship with the business analogous to the customer in a customer-proprietor relationship. *Strother v. Southern California Permanente Medical Group*, 79 F.3d 859, 873-75 (9th Cir. 1996); *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1126-27 (9th Cir. 2008). The ADA draws the same structural line. Title I regulates employment; Title III regulates public accommodations and the goods, services, facilities, privileges, advantages, and accommodations they offer the public. *Californians for Disability Rights v. Mervyn's, LLC*, 165 Cal. App. 4th 571, 583-84 (2008); *Enyart v. National Conference of Bar Examiners*, 630 F.3d 1153, 1160-62 (9th Cir. 2011).

This statutory framework creates Ross's dilemma. These three statutes, by their own terms and settled construction, do not reach employment discrimination. If Ross contends that the challenged conduct was strictly workplace employment conduct, Ross may press that argument on the merits against the viability of consumer claims. Conversely, if the alleged exclusion operated against Hansen as a retail shopper, the claims invoke public-facing duties outside the DRA. Ross cannot have it both ways. Either the claims are public-accommodation claims outside the DRA, or

Ross is making a merits attack on statutory coverage, which belongs in a separate motion and is not a basis to compel arbitration.

**VI. ROSS'S SEPARATION RECORD DOES NOT ESTABLISH THAT THE CUSTOMER CLAIMS ARISE FROM EMPLOYMENT**

Ross relies on Tony Briant's declaration that asking a separated associate not to visit Ross locations is part of its separation process and is not documented independently of employment. Briant Decl. paras. 4, 6, Dkt. 39-4. That describes Ross's internal process. It does not make store access an employment term or an employer duty an element of Counts I through III.

Briant Exhibit A reproduces Ross's standard separation script, which reads: "Given the circumstances, we ask that you do not visit (the store or any Ross or dd's location)(DC)(Corporate Campus). (Use only with separations involving workplace violence and/or threats)." Dkt. 39-5 at 1. An instruction regarding post-employment retail store access is not a term of employment. It is not a job duty, wage term, schedule, or performance standard; it regulates conduct in retail stores Ross holds open to the general public after the employment relationship ends.

Ross repeatedly frames the store-visit instruction as an "ask." Dkt. 38 at 7, 15. This framing creates a dilemma for Ross. If the instruction was merely a nonbinding request made during an exit call, it created no employment obligation and cannot bring a subsequent retail access dispute under Section A. If it operated as an enforceable exclusion, the resulting injury was denial of access to public retail stores, which is exactly what Counts I through III plead.

Ross's exhibits also do not establish what instruction was communicated. The script contains alternative location options, and the termination form has no field showing which option was selected. Dkt. 39-5 at 1-4. The only post-call record states that '[s]eparation points were given,'

followed by Briant's response, 'Thank you partners.' *Id.* at 5. On the words and geographic scope Ross invokes, its record is blank.

Even if Ross had documented the instruction, where a company files a piece of paper cannot define the scope of a plaintiff's statutory claims. A retailer cannot convert a public customer-exclusion decision into an arbitrable employment dispute by routing the instruction through its Human Resources department.

**VII. ANSWERING ROSS'S 'SAME DISCRIMINATORY ANIMUS' CONCESSION ARGUMENT**

Ross repeatedly argues that Plaintiff conceded scope in her Northern District of California venue opposition by writing that her employment claims "require adjudication of the same discriminatory animus alleged in the first three causes of action." Dkt. 38 at 12, 14 (citing Dkt. 15 at 21). Ross's quotation is accurate, but its context is the exact opposite of what Ross suggests.

First, the cited sentence on page 21 of Dkt. 15 explicitly discusses Counts IV through XIII ("Ms. Hansen's fourth through thirteenth causes of action pose a different issue"), describing what the employment claims require rather than asserting that the consumer claims arise out of employment. Second, one page earlier in the same brief, Plaintiff explicitly argued the exact reverse of a concession, writing: "Ms. Hansen's first three causes of action, all of which are consumer protection claims, must proceed in court, as they do not arise out of the employment relationship." Dkt. 15, ECF p. 20. Third, the passage on page 21 concluded by asking the court to reserve judgment on arbitrability until Ross filed a motion to compel arbitration, a reservation that Ross concedes Judge Seeborg granted. Dkt. 38 at 4-5. Fourth, on the substance, shared evidence of discriminatory animus is not a shared legal duty, injury, or contractual relationship. One

discriminatory motive can breach two independent duties: an employer's duty to an employee and a retailer's duty to the public.

**VIII. THE CASES TURN ON WHAT THE CLAIMS REQUIRE THE COURT TO DECIDE**

Claims requiring interpretation of contractual performance, duties, and restrictions fell within the clause in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721-25 (9th Cir. 1999). Independent statutory privacy claims did not. Amazon's argument that monitoring was work-related because the plaintiff was a driver 'confuse[d] the motivation' for the conduct with the nature of the claims. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1110-13 (9th Cir. 2023). Ross makes the same mistake here.

Post-termination defamation was arbitrable when falsity turned on whether a work trip was 'unapproved' under workplace policies and job duties. *Balan v. Tesla, Inc.*, 840 F. App'x 303, 304-05 (9th Cir. 2021) (unpublished). By contrast, trademark claims resolvable without reference to former employment fell outside an employment clause. *Oxy-Health, LLC v. H2 Enterprises, Inc.*, 812 F. App'x 660, 661-62 (9th Cir. 2020) (unpublished). Counts I through III require no decision about Ross's policies, Hansen's duties, or the lawfulness of her discharge.

The same distinction controlled when a former employee learned of fraud at work. The fraud existed apart from her job and could have been exposed by someone else; employment explained how she observed the conduct, not the source of the duty or claim. *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 798-800 (9th Cir. 2017). Ross's customer-facing duties likewise exist independently of Hansen's former employment. Her employment history may explain Ross's alleged motive, but it does not define the claims.

**IX. SECTION B PRESERVES ARBITRATION OF COVERED CLAIMS; IT DOES NOT CONVERT UNCOVERED CLAIMS**

Section B provides that if any claims not covered under the Agreement are combined with claims that are covered, "the covered claims will be arbitrated and continue to be covered under this Agreement." Dkt. 39-3, Ex. A at 3. It preserves covered claims; it does not convert uncovered ones. Ross's reading erases the category that triggers the provision.

This provision supports Plaintiff's requested split for three textual reasons. First, Section B explicitly states that covered claims will be arbitrated; it contains no language converting uncovered claims into arbitrable ones. Second, Section B lives under the heading "Limitations on Application of This Agreement," functioning as a carve-out preserving arbitration of covered claims in mixed actions, rather than an expansion clause. Third, Section B presupposes that "claim(s) not covered" exist. Ross's reading would eliminate the very category of uncovered claims that triggers the provision.

Additionally, Sections G and H demonstrate that Ross knew how to mandate a judicial stay when intended, providing that nonarbitrable class actions "will be stayed" and PAGA claims "shall be stayed in the trial court." Dkt. 39-3, Ex. A at 5. Section B contains no comparable stay mandate for standard uncovered claims.

**X. THE TRANSFER ORDER EXPRESSLY RESERVED THE ARBITRABILITY QUESTION**

Ross relies on observations in Judge Seeborg's venue transfer order. Dkt. 38 at 4-5, 12. But Judge Seeborg expressly stated: 'Whether this action must be arbitrated is not presently before the court.' Dkt. 19 at 3. He transferred the case 'without prejudice' to this Court's determinations

concerning enforceability and 'applicability to plaintiff's claims.' *Id.* The order therefore did not decide the arbitrability question it expressly reserved.

**XI. SECTION 3 OF THE FAA DOES NOT REQUIRE A STAY OF COUNTS I THROUGH III**

Section 3 mandates a stay only for a claim or issue 'referable to arbitration.' 9 U.S.C. Sec. 3. *Smith v. Spizzirri* required a stay rather than dismissal after all claims were conceded arbitrable; it did not extend Section 3 to claims outside the agreement. 601 U.S. 472, 475-76 (2024). Section 3 does not mandate a stay of nonarbitrable claims merely because other claims are arbitrable. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 832 (9th Cir. 2019). Courts must address arbitrability claim by claim even if parallel proceedings result. *KPMG LLP v. Cocchi*, 565 U.S. 18, 19-22 (2011) (per curiam).

The Court may compel Counts IV through XIII to arbitration while retaining judicial jurisdiction over Counts I through III.

**XII. CONCLUSION**

Because Counts I, II, and III assert standalone public-accommodation claims outside Section A of the DRA, Plaintiff respectfully requests that the Court grant Plaintiff's Motion [Dkt. 32] and declare that Counts I, II, and III fall outside the scope of Defendant's Dispute Resolution Agreement.

DATED: August 14, 2026.

*/s/ Shemia Fagan*
Shemia Fagan,. ISB No. 12416
E-mail: sfagan@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
999 West Main Street, Suite 100
Boise, ID 83702
Telephone: 208-500-2442
Facsimile: 206-260-3055
*Attorneys for Plaintiff*