Shemia Fagan, ISB No. 12416
sfagan@hkm.com
HKM EMPLOYMENT ATTORNEYS LLP
999 West Main Street, Suite 100
Boise, ID 83702
Telephone: 208-500-2442
Facsimile: 206-260-3055

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| AMY HANSEN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ROSS DRESS FOR LESS, INC., a Virginia Corporation,<br><br>Defendant. | Case No.: 1:26-cv-00116-BLW<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS [DKT. 39]** |

## I. INTRODUCTION

Ross asks the Court to enforce a contract the parties did not make. Hansen agreed to arbitrate disputes related to her employment, not every later dispute with Ross as a customer of the store. Counts IV through XIII are employment claims and may be compelled. Counts I through III allege a different injury: during the June 8, 2024, termination call, Ross allegedly

communicated an exclusion intended to govern Hansen's shopper access after her employment ended. Those counts invoke duties Ross owes as a retailer and public accommodation. Ross never identifies an employment right or duty the Court must decide to resolve them.

Instead, Ross substitutes three propositions for the written scope requirement. It substitutes a connection to Ross for a connection to employment. It substitutes shared chronology and alleged motive for the elements and duties that define each claim. And it substitutes Ross's internal Associate Relations process for Hansen's consent. None follows from Section A. A company can route a customer-facing decision through Human Resources, place it in a personnel file, and communicate it during a termination call. Those administrative choices do not convert the customer's resulting statutory claim into a dispute about employment.

Ross's theory has no stopping point. If a former employee were later injured by merchandise, denied a refund, or excluded from a store, Ross could call the dispute employment-related whenever an employee remembered the former job, consulted a personnel file, or acted on information learned at work. Section A does not say that. It defines coverage through the employment-nexus sentence, then gives fifteen examples of disputes satisfying that definition and ends with a catchall for laws governing the employment relationship. Dkt. 39-3, Ex. A at 3. Section B separately presupposes that Hansen may combine covered claims with claims that are not covered. Id. Ross's interpretation deletes both limitations.

The Ninth Circuit supplies the governing method. *Cocom* requires the Court to read the clause as a whole. *Welch* requires a direct relationship between the claim and an employment obligation. *Jackson* applies that inquiry claim by claim rather than treating shared background or motive as contractual scope. The closest factual decision reaches the same result: *Oliver* compelled

a former employee's employment claims but left a later property-exclusion claim in court even though the employer relied on information learned during employment.

Ross also asks the Court to decide scope on an evidentiary record that does not establish the alleged restriction's words, selected location, geographic reach, enforcement, or current status. The generic script offers several alternative locations. Dkt. 39-5 at 1. The termination record and email do not quote what Store Manager Maria Rosales said. Id. at 2-5. Tony Briant does not claim he heard the call. Dkt. 39-4, paras. 2-6. Ross cannot use its disputed merits characterization as a substitute for contractual scope.

The Court should enforce the DRA as written: compel Counts IV through XIII, deny compulsion of Counts I through III, and stay only the arbitrable counts. That result is not an exception to the FAA. It is what the FAA requires when parties agree to arbitrate some disputes but not others.

**II. THE DRA AND THE PRESENT RECORD**

Section A is titled Covered Disputes. Its operative language covers disputes between Hansen and Ross, or another Ross associate, agent, or employee, that arise out of or are in any way related to Hansen's employment with Ross. Dkt. 39-3, Ex. A at 3. The object is employment. The counterparties do not eliminate that object; they identify who may participate in a covered employment dispute.

The rest of Section A confirms, rather than erases, that limit. Its first sentence covers disputes related to Hansen's application, employment, or separation, whether the theory sounds in contract, tort, statute, privacy, public policy, constitution, or otherwise. Id. It then gives fifteen examples of Covered Disputes. Generic labels such as negligence, fraud, defamation, privacy, personal injury, and economic damages do not become freestanding grants because the defined

term remains governed by the employment-nexus sentence. The list culminates in violations of laws governing the employment relationship. Id. Section A does not mention retail transactions, customer access, business establishments, public accommodations, post-employment entry restrictions, or claims arising from a separate customer relationship.

Section B is decisive structural evidence. Under the heading Limitations on Application of This Agreement, it addresses a matter combining claims not covered by the DRA with claims that are covered. Id. It directs that the covered claims will be arbitrated and continue to be covered. Id. Thus, the contract expressly contemplates litigation containing both categories. It identifies which category survives joinder: the covered claims. It nowhere says joinder changes the uncovered claims or sends the entire case to arbitration.

Other provisions confirm that allocation. Section E reserves applicability and arbitrability to the Court. Id. at 4. Section F protects remedies on covered claims. Id. at 4-5. Sections G and H impose express stays for specified nonindividual proceedings. Id. at 5. Section I permits minimum reformation or severance of an invalid provision. Id. at 5-6. Ross drafted consequences when it wanted them; the ordinary mixed-claim provision contains no all-claims scope or blanket stay.

The Complaint alleges that Ross operates a national retail chain and, in connection with Hansen's termination, imposed a companywide ban on her as a customer. Compl. (Dkt. 1), paras. 9, 16-18. Hansen declared that Rosales told her during the June 8, 2024 call that she was fired and banned as a customer from all Ross stores; the separation record lists June 9 as the effective date. Hansen Decl. (Dkt. 15-1), para. 8; Dkt. 39-5 at 2. Ross disputes that characterization and calls any instruction a separation request. Dkt. 39-1 at 7 n.2; Dkt. 39-4, paras. 2-6. Scope turns on the legal relationship and duty pleaded, not which merits account ultimately prevails.

Count I alleges that Ross is a business establishment and denied Hansen full and equal accommodations, advantages, facilities, privileges, or services because of disability. Compl., paras. 19-27; California Civil Code section 51. Count II alleges that Ross, as a business establishment, refused to contract, sell, or otherwise do business with her. Compl., paras. 28-36; California Civil Code section 51.5. Count III alleges that Ross owns, operates, leases, or leases to a place of public accommodation and denied Hansen equal access to its goods and services. Compl., paras. 37-43; 42 U.S.C. Sec. 12182(a). It seeks injunctive relief. Compl., para. 43.

None of those elements asks whether Hansen was qualified for a job, performed a job duty, received an employment accommodation, violated workplace policy, was properly disciplined, or was lawfully discharged. By contrast, Count IV begins by alleging that Ross was Hansen's employer and that Hansen was employed by Ross. Compl., paras. 44-47. Counts IV through XIII then challenge duties and injuries arising from employment, termination, defamation about employment, emotional distress from the employment events, and wages. Id., paras. 44-147. The pleading itself draws the line Section A draws.

Capacity follows the duty and elements pleaded, not the claimant's biography. In *Alch v. Superior Court*, television writers alleged that talent agencies denied them representation because of age. Their objective was work with studios and they alleged lost employment income, but the court treated them as agency clients seeking services, not employees. 122 Cal. App. 4th 339, 391-95 (2004). *Johnson v. Riverside Healthcare System, LP* drew the opposite line because the paid and controlled plaintiff alleged workplace discrimination. 534 F.3d 1116, 1124-27 (9th Cir. 2008). Hansen pleads denial of retail services and business dealings as a shopper; Count IV separately pleads employment. Compl., paras. 19-56. Ross's territorial objection is a merits and choice-of-law defense, not a reason the pleaded shopper claims arise from employment. Dkt. 39-1 at 2 n.1.

Title III reinforces that distinction. *Robles v. Domino's Pizza, LLC* treated services tied to physical restaurants as public-facing under Title III and contrasted an employer-provided insurance policy lacking a nexus to a place open to the public. 913 F.3d 898, 904-05 (9th Cir. 2019). *Robles* does not decide arbitration, but it identifies the capacity and duty Count III invokes. Hansen alleges denial of access to physical retail stores and their goods, not denial of a job, wage, benefit, or schedule. Compl., paras. 37-43.

Dan Stock authenticates the onboarding platform and DRA. Stock Decl. (Dkt. 39-2), paras. 3-8. Hansen does not contest formation, validity, or FAA applicability for this motion. Stock does not testify who made a shopper-access decision, what geographic scope anyone selected, how it would be enforced, or whether any restriction remains active.

Briant describes an Associate Relations process in which a district manager aligns with a recommendation, talking points are sent to the manager, and a standard script may be used. Dkt. 39-4, paras. 2-4. He says Rosales later confirmed that points were given and labels any store-visit request part of separation. Id., paras. 5-6. That supplies Ross's conclusion, not firsthand evidence of the communication.

Exhibit A is a template with alternatives: the store, any Ross or dd's location, a distribution center, or the corporate campus. Dkt. 39-5 at 1. It does not identify the option used for Hansen. The termination form records a telephone separation and Workplace Anti-Violence code, but no instruction. Id. at 2-4. Rosales's email states only that separation points were given. Id. at 5.

Rosales supplied no declaration. Briant does not state that he heard the call. No witness explains whether Ross issued a binding directive, disseminated or enforced a shopper exclusion, denied an attempted purchase, or rescinded anything. Those gaps may require merits discovery; they cannot broaden Section A.

## III. GOVERNING STANDARD AND COURT-RESERVED SCOPE

Ross bears the burden of proving both a valid written arbitration agreement and that the agreement encompasses the dispute at issue. *Ashbey v. Archstone Property Management, Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Hansen does not contest formation or FAA coverage and accepts arbitration of Counts IV through XIII. Section E reserves interpretation, applicability, and arbitrability exclusively for the Court, and Ross concedes that reservation. Dkt. 39-3, Ex. A at 4; Dkt. 39-1 at 8 n.3. The disputed question is whether Section A encompasses each of Counts I through III.

The FAA directs courts to enforce the arbitration agreement according to its terms. 9 U.S.C. Sec. 4. A court may compel a particular dispute only after concluding that the parties agreed to arbitrate that dispute. *Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 299-303 (2010). The federal policy places arbitration contracts on equal footing with other contracts; it does not permit an arbitration-specific rule that goes beyond the contract. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Ross's invocation of policy and doubts cannot displace the written object of the clause.

Related-to language is broad, but not limitless; it requires a direct relationship to the subject the clause names. *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791, 797-800 (9th Cir. 2017). Courts examine the agreement and operative allegations claim by claim. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1110-13 (9th Cir. 2023). Uncovered claims may proceed in court separately even if covered claims must be arbitrated. *KPMG LLP v. Cocchi*, 565 U.S. 18, 19-22 (2011) (per curiam); *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217-21 (1985).

**IV. SECTION A'S TEXT AND STRUCTURE LIMIT COVERAGE TO EMPLOYMENT DISPUTES**

Ross repeatedly isolates any and all disputes, in any way related, and separation from the sentence that contains them. Dkt. 39-1 at 2, 6, 9-11. Grammar and structure defeat that approach. Any and all describes the breadth of disputes; related to describes the connection; Hansen's employment with Ross identifies the required object. Dkt. 39-3, Ex. A at 3. Separation appears inside an employment list and naturally means separation from employment. It does not turn every act communicated at separation into an employment dispute forever.

*Cocom* supplies both the governing method and Ross's strongest textual counterargument. It held that 'all disputes' and 'any claim' were limited by employment-specific examples and AAA employment rules. *Cocom v. ABM Aviation, Inc.*, No. 25-3246, slip op. at 12-15 (9th Cir. June 23, 2026). But *Cocom* also said the same ejusdem generis analysis was unavailable in *Cook* because *Cook*'s enumeration included general tort claims unrelated to employment. Id. at 13-14. Ross can therefore point to Section A's generic labels for negligence, fraud, defamation, privacy, personal injury, and economic loss. Those labels matter, but they do not erase Section A's operative requirement that a dispute arise out of or relate to employment. Unlike *Cook*, this DRA never says 'whether or not' the claim arises from employment, and Section B expressly recognizes uncovered claims. The question remains whether Counts I-III satisfy the employment nexus, not whether they sound in tort or statute.

Ross's construction also makes contractual language surplusage. If Section A means every dispute between Hansen and Ross whenever employment appears anywhere in the story, the phrase related to your employment does no work. The examples do no limiting work. The laws-governing-employment catchall does no work. And Section B's uncovered-claim category nearly

disappears. The Court should reject a construction that achieves breadth by deleting the provisions Ross drafted.

*Cook* makes the missing language concrete. USC's agreement covered claims 'whether or not arising out of' employment, and the court held that text reached unrelated claims, unlike provisions expressly limited to claims arising from employment. *Cook v. University of Southern California*, 102 Cal. App. 5th 312, 316-17, 323-25 (2024). Ross wrote the latter kind: only disputes related to Hansen's employment. Section B then confirms that other claims remain uncovered.

## V. COUNTS I THROUGH III ASSERT PUBLIC-FACING RIGHTS, NOT EMPLOYMENT RIGHTS

A claim-specific analysis asks what Hansen must prove and in what capacity Ross allegedly owed the duty. Count I asks whether a business establishment denied equal accommodations or services. Count II asks whether a business refused to sell, contract, or conduct business. Count III asks whether an operator of a public accommodation denied equal access to goods or services. Compl., paras. 19-43. A shopper who never worked for Ross could assert the same duties based on the same alleged exclusion. Employment may explain why Ross allegedly acted, but the elements of these claims are unrelated to employment.

The comparison to Count IV is concrete, not semantic. To establish Count IV, Hansen alleges she must show that Ross was her employer, she was its employee, Ross knew or perceived disability, and it subjected her to adverse employment action. Compl., paras. 44-56. The remaining employment counts similarly depend on accommodation, interactive-process, discipline, discharge, workplace statements, or wages. Id., paras. 57-147. Counts I through III do not. A decision on whether Ross denied retail access will not establish whether Ross reasonably accommodated Hansen at work. A decision on the termination will not establish whether a continuing public-facing exclusion is lawful.

Incorporation of background allegations does not collapse those elements. Counts I through III incorporate prior paragraphs, as complaints routinely do. Compl., paras. 19, 28, 37. The relevant question is not whether evidence overlaps but whether the claim depends on the covered relationship. *Jackson* rejected Amazon's effort to make motive and historical context do the work of a contractual nexus. 65 F.4th at 1110-13. *Welch* likewise held that a claim discovered through employment remained independent when its statutory duty did not arise from employment. 871 F.3d at 798-800.

Ross's contrary rule would let the identity of the alleged discriminator erase the capacity in which the injury occurs. But the same corporation can be an employer, retailer, landlord, educator, carrier, or contracting party. Arbitration consent in one relationship is not blanket consent in all of them. The cases apply that ordinary proposition even when one factual narrative explains both sets of claims.

**VI. NINTH CIRCUIT LAW AND THE CLOSEST FACTUAL DECISIONS REQUIRE CLAIM-SPECIFIC ANALYSIS**

Controlling circuit authority makes Ross's historical-nexus test insufficient. *Welch* held that work may explain how a claimant learned of misconduct without supplying the statutory duty or legal basis of the claim. 871 F.3d at 797-800. *Oxy-Health, LLC v. H2 Enterprises, Inc.* held a former employee's trademark claims outside an employment clause because they could be resolved without reference to employment. 812 F. App'x 660, 661-62 (9th Cir. 2020) (unpublished). *Jackson* treated delivery work as context and motive, not the nature of privacy claims that non-drivers could assert. 65 F.4th at 1110-13. These decisions ask whether the merits depend on an employment right or obligation, not whether employment appears in the causal story. Counts I through III depend on duties owed to persons seeking goods, services, accommodations, and business dealings.

*Oliver v. Nordstrom King of Prussia* is the closest factual comparison. A former Nordstrom employee alleged employment discrimination and wrongful termination, plus intentional interference after Nordstrom barred her from its property and prevented her from working an event for a new cosmetics employer. No. 10-5340, 2010 WL 5121966, at *1-3 (E.D. Pa. Dec. 14, 2010). The agreement covered disputes arising from application, termination, and the employment relationship and listed employment statutes, wage claims, contract claims, torts, and unlawful discharge. Id. The court compelled the employment claims but refused to compel the property-exclusion claim. Id. at *6-8.

*Oliver* also rejects Ross's same-information and same-defense theory. Nordstrom relied on safety information learned during employment to justify both termination and the later property restriction. Id. at *6-7. That common source and similar rationale did not place the exclusion claim inside the employment agreement. Id. at *7-8. *Oliver* sought access for work with another company, while Hansen alleges access as an ordinary shopper. *Oliver*'s restriction was communicated after termination, while Hansen alleges two messages during one call. That timing difference favors Ross factually, but it does not change the prospective capacity regulated or the public-facing duty pleaded.

*Juarez v. Social Finance, Inc.* supplies an Unruh arbitration comparison. SoFi's clause covered claims arising from a website registration, information submission, or loan application. The court compelled discrimination claims based on the covered application but declined to compel later telephone-inquiry and Unruh theories because the clause operated transaction by transaction. No. 20-cv-03386-HSG, Dkt. 77, slip op. at 3-7 (N.D. Cal. Aug. 24, 2021). Hansen's distinction is stronger: her agreement governs employment, while Counts I through III invoke shopper access under duties running to the public.

The result in *Smith v. Walmart Inc.* turned on materially broader language. A delivery contractor alleged discrimination, defamation, and false imprisonment after Walmart personnel detained her family while they were shopping. No. 7:22-cv-00568-EKD, slip op. at 4-5, 9-11 (W.D. Va. Aug. 14, 2023). The court compelled because the agreement covered all disputes between the parties regardless of any connection to her services, wording the court described as exceptionally broad. Id. Ross's DRA instead requires an employment relationship and expressly recognizes uncovered claims in Section B.

*Vaughn v. Tesla, Inc.* applies the same claim-specific method to nearly identical operative language. Tesla's clause covered disputes arising from or relating to employment or termination. 87 Cal. App. 5th 208, 216, 220-23 (2023). Although the plaintiffs alleged the same discrimination, workplace, coworkers, and managers before and after direct hire, the earlier claims remained outside because their duties were not rooted in the later direct-employment relationship. Id. at 220-23. Hansen's sequence is reversed, but the point is the same: shared actors, history, and proof do not replace the relationship the clause names.

## VII. SHARED MOTIVE, TIMING, PERSONNEL, AND PROOF DO NOT ESTABLISH CONTRACTUAL SCOPE

Ross emphasizes one chronology: disclosure, investigation, termination, and alleged store restriction. Dkt. 39-1 at 3, 10-13. But if Ross had terminated Hansen without restricting customer access, the employment counts could remain while Counts I-III disappeared. If Ross imposed the same alleged exclusion on a nonemployee shopper, Counts I-III could exist alone. That separability shows distinct contractual scope.

Ross calls Hansen's earlier reference to the same alleged animus a concession. Dkt. 39-1 at 12 (quoting Dkt. 15 at 21). The cited brief said the employment counts presented a separate arbitrability issue and asked the transferor court to reserve it; it described Counts I through III as

consumer claims. Dkt. 15 at 20-22. Counts I through III may require proof that Ross knew of disability and acted because of it, but that establishes the alleged motive for a public-facing denial, not an employment duty. It does not require deciding whether Ross accommodated Hansen, enforced a workplace rule properly, or lawfully terminated her. Shared motive therefore does not supply contractual scope. *Jackson*, 65 F.4th at 1110-13; *Oliver*, 2010 WL 5121966, at *6-8.

Nor does use of the same decisionmakers establish scope. A manager may participate in termination and later enforce a store policy. A human-resources department may advise both. Witness overlap may affect discovery sequencing, but the DRA does not define coverage by witness identity. The claim elements still ask different questions, and Section B anticipates the resulting mixed case.

Timing at the termination call is not dispositive. Section A covers whether termination was discriminatory; it does not automatically absorb every separate legal injury announced in the same conversation. Hansen alleges two messages: fired as an employee and excluded nationwide as a customer. Hansen Decl., para. 8. Counts IV-XIII challenge the first under employment duties; Counts I-III challenge the second under public-facing duties.

**VIII. ROSS'S NINTH CIRCUIT AUTHORITIES TURN ON COVERED DUTIES THAT ARE ABSENT HERE**

*Simula, Inc. v. Autoliv, Inc.* involved an international development and license agreement. 175 F.3d 716, 719-21 (9th Cir. 1999). Its antitrust theory attacked contractual exclusivity; Lanham Act and defamation theories challenged the exclusive distributor's promotional conduct; and trade-secret theories arose from technology transfer and nondisclosure. Id. at 721-25. Each required contract performance or contract-created duties. Ross identifies no DRA term, job duty, or employment promise needed to decide a retail exclusion.

*Balan v. Tesla, Inc.* is unpublished and materially different in agreement application, capacity, facts, elements, and holding. Its clause covered claims arising from or relating to employment or termination. 840 F. App'x 303, 304 (9th Cir. 2021). Although Tesla published the challenged statements after termination, each accused *Balan* in her former-employee capacity of workplace misconduct: taking an unapproved work trip at company expense and secretly recording internal conversations. Id. at 304-05. Falsity therefore required deciding travel approval, job purpose and duties, office privacy expectations, and workplace recording policies. Id. The Ninth Circuit compelled those defamation theories because their merits depended directly on employment rules. Id. at 303-05. Counts I-III require none of that. Ross's alleged public-facing duty turns on shopper access, not whether Hansen violated policy or was properly terminated.

Ross calls *Oxy-Health* a dispute among former business partners. Dkt. 39-1 at 15. But the plaintiff employer sued a former employee and his business under an employment-related clause. 812 F. App'x at 661. The Ninth Circuit excluded the trademark counts because they could be decided without reference to employment. Id. at 661-62. It examined claim requirements, not historical relationship labels.

Ross distinguishes *Welch* because a False Claims Act claim belongs to the government. Dkt. 39-1 at 14. That explains its facts, not away its rule: related-to employment requires a direct relationship to an employment obligation. 871 F.3d at 797-800. Counts I-III are Hansen's own claims, but their asserted duties run to persons seeking goods, services, accommodations, and business dealings, not employees alone.

Ross distinguishes *Jackson* because non-drivers could belong to the monitored groups. Dkt. 39-1 at 15-16. That is why it helps Hansen: nonemployee shoppers can be denied retail access.

Driver activity allegedly motivated Amazon's monitoring, but motive did not change the claim's nature. 65 F.4th at 1111. Ross offers no principled distinction.

**IX. SECTION B REQUIRES PARTIAL ARBITRATION; SECTIONS F AND I DO NOT EXPAND COVERAGE**

Ross argues that Section B compels all claims once combined. Dkt. 39-1 at 12-13. The text says the opposite. It begins with claims not covered combined with covered claims and preserves arbitration of the covered claims. Dkt. 39-3, Ex. A at 3. It protects arbitration from joinder; it does not erase the uncovered category.

Section F permits court-available remedies for claims properly before the arbitrator. Id. at 4-5. It does not define scope. Otherwise, every remedies clause would silently enlarge every arbitration clause.

Section I does not help Ross. Hansen seeks enforcement of Section A's boundary, not invalidation. No reformation is needed. If it were, Section I authorizes only the minimum change, not adding shopper disputes. Dkt. 39-3, Ex. A at 5-6.

The FAA and Section B require the same result: arbitrate covered claims even when uncovered claims proceed separately. *KPMG*, 565 U.S. at 19-22; *Dean Witter*, 470 U.S. at 217-21. Partial arbitration is the contractual procedure, not a workaround.

**X. THE TRANSFER ORDER EXPRESSLY RESERVED ARBITRABILITY**

The transfer order stated that the customer-ban allegations fall within the arbitration agreement and called Hansen's contrary contention without merit. Transfer Order (Dkt. 19) at 3. Hansen does not minimize that language. Law-of-the-case principles generally apply to issues decided and give transfer determinations particular force. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815-17 (1988).

But the same paragraph expressly stated that whether this action must be arbitrated was not before the transferor court. Dkt. 19 at 3. The order transferred under 28 U.S.C. Sec. 1406(a) without prejudice to this Court's determinations regarding the DRA's enforceability and applicability to Hansen's claims. Id. It did not adjudicate Dkt. 39, conduct a claim-by-claim scope analysis, parse Sections A and B, address Ross's declarations and exhibits, or compare the employment and shopper capacities. Treating the preliminary venue observation as the reserved arbitrability ruling would contradict the order's own limit.

**XI. SECTION 3 DOES NOT REQUIRE A STAY OF COUNTS I THROUGH III**

Section 3 stays only an issue referable to arbitration. 9 U.S.C. Sec. 3. Counts IV-XIII meet that condition; Counts I-III do not. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 832 (9th Cir. 2019). *Oliver* likewise allowed the post-employment exclusion tort to proceed while employment claims were arbitrated. 2010 WL 5121966, at *7-8.

*Smith v. Spizzirri*, 601 U.S. 472, 475-76 (2024), involved a concession that every claim was arbitrable and resolved stay versus dismissal. It requires a stay when Section 3 applies; it does not expand the statute to disputes outside an agreement. The antecedent question here is which claims are referable.

The DRA confirms the distinction. Sections G and H expressly say that specified nonarbitrable class, collective, and representative proceedings will or shall be stayed. Dkt. 39-3, Ex. A at 5. Section B contains no comparable command for ordinary uncovered claims. The Court should not add one.

A discretionary stay requires an even balance and a clear showing of hardship when delay may injure the nonmoving party. *Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936). Ross offers general overlap, not concrete hardship. Dkt. 39-1 at 17-18. Employment arbitration

will not necessarily decide the alleged shopper restriction's words, reach, status, enforcement, or public-accommodation legality.

Hansen declares that the alleged ban has prevented her from shopping at Ross, one of the only stores in her area selling clothing within her budget. Hansen Decl. (Dkt. 15-1), para. 11. Count III seeks injunctive relief. Compl., para. 43. A blanket stay could leave that alleged exclusion unreviewed throughout arbitration of ten employment counts. If the Court considers a discretionary stay, Hansen requests a narrow, time-limited stay with status reports and a reconsideration date.

**XII. CONCLUSION**

The Court should grant Dkt. 39 only as to Counts IV through XIII; deny the motion to compel Counts I through III; stay only Counts IV through XIII under Section 3; deny an indefinite discretionary stay of Counts I through III; and permit the three shopper claims to proceed in this Court.

DATED: August 19, 2026.

*/s/ Shemia Fagan*

Shemia Fagan,. ISB No. 12416
E-mail: sfagan@hkm.com
**HKM EMPLOYMENT ATTORNEYS LLP**
999 West Main Street, Suite 100
Boise, ID 83702
Telephone: 208-500-2442
Facsimile: 206-260-3055

*Attorneys for Plaintiff*